## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FOREVER 21, INC., et al.,[1]<br><br>          Debtors. | Chapter 11<br><br>Case No. 19-12122 (KG)<br><br>(Jointly Administered) |
| ALLIED DEVELOPMENT OF ALABAMA, LLC,<br><br>          Plaintiff,<br><br>          v.<br><br>FOREVER 21, INC., et al., and<br>JATIN MALHOTRA,<br><br>          Defendants. | Adv. Pro. No. 19-50897 (KG) |

## PLAINTIFF'S ANSWERING BRIEF IN RESPONSE AND OPPOSITION TO THE OPENING BRIEF OF DEFENDANTS FOREVER 21, INC., ET AL., IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

Dated: January 17, 2020

Ann M. Kashishian (DE Bar No. 5622)
**KASHISHIAN LAW LLC**
501 Silverside Road
Wilmington, DE 19809
T. (484) 302-8417
F. (484) 930-0091
E. amk@kashishianlaw.com

*Counsel to Allied Development of Alabama, LLC*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Forever 21, Inc. (4795); Alameda Holdings, LLC (2379); Forever 21 International Holdings, Inc. (4904); Forever 21 Logistics, LLC (1956); Forever 21 Real Estate Holdings, LLC (4224); Forever 21 Retail, Inc. (7150); Innovative Brand Partners, LLC (7248); and Riley Rose, LLC (6928). The location of the Debtors' service address is: 3880 N. Mission Road, Los Angeles, California 90031.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………...……ii

NATURE AND STAGE OF THE PROCEEDINGS……………………………………….……1

SUMMARY OF ARGUMENT…………………………………………………………….…..2

STATEMENT OF FACTS…………………………………………………………………..…3

ARGUMENT……………………………………………………………………………….…..7

      I.      LEGAL STANDARD……………………………………………………………8

      II.     THE ADVERSARY PROCEEDING IS PROCEDURALLY PROPER AND PRESENTS THE ONLY VIABLE METHOD OF RECOURSE AVAILABLE TO ALLIED……………………………………………………………………9

      III.    THE ADVERSARY PROCEEDING DOES NOT VIOLATE THE AUTOMATIC STAY……………………………………………………………12

      IV.    THE DEBTORS' REQUEST TO STAY THIS ADVERSARY PROCEEDING LACKS MERIT AND SHOULD BE REJECTED………………………...……15

CONCLUSION……………………………………………………………………………..17

## **TABLE OF AUTHORITIES**

**Cases**

*Avis Rent A Car Systems, Inc. v. Heilman*, 876 So. 2d 1111 (Ala. 2003)................................ 10, 11

*Battles v. Atchison*, 545 So.2d 814 (Ala. Civ. App. 1989) ........................................... 10

*Bell Atl. Corp. v. Twombly,* 550 U.S. 554 (2007) ........................................................ 8

*Bisk Education, Inc. v. Aspect Software, Inc. (In re Aspect Software Parent, Inc.),*

        Am. Mem. Op., Adv. Pro. No. 16-51510 (MFW) (Bankr. D. Del. Sept. 6, 2017) ........... 14

*Charan Trading Corp. v. Uni-Marts, LLC, et al. (In re Uni-Marts, LLC)*,

        Mem. Op., Adv. Pro. No. 08-51239 (MFW) (Bankr. D. Del. Jan. 12, 2009)............. 12, 13

*Civic Ctr. Square, Inc. v. Ford (In re Roxford Foods, Inc.)*, 12 F.3d 875 (9th Cir. 1993) ........... 13

*Dibbern v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 325 B.R. 89

        (Bankr. S.D.N.Y. 2005), *rev'd on other grounds*, 331 B.R. 93 (S.D.N.Y. 2005) ............ 13

*Healy/Mellon-Stuart Co. v. Coastal Group, Inc. (In re Coastal Group, Inc.)*,

        100 B.R. 177 (Bankr. D. Del. 1989) ................................................................. 13

*In re Am. Classic Voyages, Co.*, 298 B.R. 222 (Bankr. D. Del 2003) ......................................... 14

*In re American Film Technologies, Inc.*, 175 B.R. 847 (Bankr. D. Del. 1994)............................. 3

*In re Congoleum Corp.*, Case No. 03-51524 (Bankr. D.N.J. Jul. 27, 2007).................................. 9

*In re Downey Financial Corp.*, 428 B.R. 595 (Bankr. D. Del. 2010).......................................... 14

*In re Granite Partners, LP.,* 194 B.R. 318 (Bankr. S.D.N.Y. 1996) ........................................... 13

*In re Montgomery Cty. D.O.H.R*, 10 So. 3d 31 (Ala. Civ. App. 2008) .................................. 10, 11

*In re Nosek*, 363 B.R. 643 (Bankr. D. Mass. 2007) ..................................................... 17

*In re Sun Belt Elec. Constructors, Inc.*, 56 B.R. 686 (Bankr. N.D. Ga. 1986) ............................ 10

*In re Sussex Title, LLC*, Case No. 07-22878PM (Bankr. D. Md. Jul. 24, 2008) ................... 10, 12

*In re Transcolor Corp.*, 296 B.R. 343 (Bankr. D. Md. 2003) ........................................................ 12

*In re WorldCorp, Inc.*, Case No. 99-298 (MFW) (Bankr. D. Del. Aug. 17, 2000) ...................... 10

*J.T. Moran Fin. Corp. v. Am. Consol. Fin. Corp. (In re J.T. Moran Fin. Corp.)*,

    124 B.R. 931 (S.D.N.Y. 1991) ........................................................................................ 13

*Kesar, Inc. v. Uni-Marts, LLC (In re Uni-Marts, LLC)*,

    405 B.R. 113 (Bankr. D. Del. 2009) ................................................................................ 12

*Lacey v. Edmunds Motor Company*, 269 Ala. 398 (Ala. 1959) .............................................. 10, 11

*Mervyn's LLC v. Lubert-Adler Group IV, LLC (In re Mervyn's Holdings, LLC)*,

    Adv. Pro. No. 08-11586 (KG) (Bankr. D. Del. 2010) ........................................................ 8

*Nat'l City Bank of Minneapolis v. Lapides (In re Transcolor Corp.)*,

    296 B.R. 343 (Bankr. D. Md. 2003) ................................................................................ 12

*Oatway v. Am. Int'l Group, Inc.*, 325 F.3d 184 (3d Cir. 2003) ................................................... 8

*Popple v. Elliott Greenleaf & Siedzikowski, P.C. (In re Popple)*,

    532 B.R. 581 (Bankr. M.D. Pa. 2015) .............................................................................. 15

*Prewitt v. N. Coast Vill., Ltd. (In re N. Coast Vill., Ltd.)*,

    135 B.R. 641 (B.A.P. 9th Cir. 1992) ................................................................................ 13

*Watson v. TSC Global, LLC, et al. (In re TSC Global, LLC)*,

    Adv. Pro. No. 12-50119 (KG) (Bankr. D. Del. Jun. 26, 2013) ................................... 11, 17

*Willcutt v. Union Oil Co. of California*, 432 So. 2d 1217 (Ala. 1983) ................................... 10, 11

**Statutes**

11 U.S.C. § 105(a) ..................................................................................................................... 15, 17

**Rules**

Fed. R. Bankr. P. 7001 ......................................................................... 2, 7, 8, 9, 10, 11, 12

Fed. R. Civ. P. 8(d)(2)............................................................................................. 11

Fed. R. Civ. P. 12(b)(6)…………………………………………………………………………8

## NATURE AND STAGE OF THE PROCEEDINGS

This adversary proceeding is simple and exists for one reason: the above-captioned debtors and debtors-in-possession (the "Debtors") and their former Vice President of Real Estate, Jatin Malhotra (together with the Debtors, the "Defendants"), fraudulently induced plaintiff Allied Development of Alabama, LLC (the "Plaintiff" or "Allied") to enter into a lease.[2]  In an attempt to seek redress, the Plaintiff commenced the above-captioned adversary proceeding (the "Adversary Proceeding") on November 22, 2019 by filing its *Adversary Complaint for Damages, Declaratory Relief, and Related Relief* (the "Complaint") [D.I. 1] in accordance with Rule 7003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Court originally offered January 3, 2020 at 11:00 a.m. as the pre-trial conference date and time in this Adversary Proceeding.  However, the parties subsequently stipulated to adjourn the pre-trial conference to the Debtors' February 2020 omnibus hearing.  According to both the Adversary Proceeding docket and the Debtors' main case docket, that omnibus hearing has not yet been scheduled.  Thus, the pre-trial conference in this matter remains adjourned to a date-to-be-determined according to the Court's convenience.

In the interim, the Debtors filed their *Motion to Dismiss the Complaint* (the "Motion to Dismiss") [D.I. 4] on December 26, 2019.  In support of the Motion to Dismiss, the Debtors filed the *Opening Brief of Defendants Forever 21, Inc., et al., in Support of Their Motion to Dismiss the Complaint* (the "Opening Brief") [D.I. 5].  Defendant Jatin Malhotra filed a joinder to the Motion to Dismiss on the same date [D.I. 6].  The parties subsequently agreed to a briefing schedule (the "Briefing Schedule") [D.I. 16] in accordance with Rule 7007-1(a) of the *Local Rules for the United States Bankruptcy Court of the District of Delaware* (the "Local Rules").

---

[2] At the very least, the Defendants negligently misrepresented material facts that induced the Plaintiff to enter into the Lease Agreement to its detriment.

The Briefing Schedule sets (i) a deadline of January 17, 2020 for this *Answering Brief in Response and Opposition to the Opening Brief of Defendants Forever 21, Inc., et al., in Support of Their Motion to Dismiss the Complaint* (the "Answering Brief"), and (ii) a deadline of January 31, 2020 for the Debtors' reply brief in further support of the Motion to Dismiss.  In accordance with the Briefing Schedule, Plaintiff hereby submits this Answering Brief.

## SUMMARY OF THE ARGUMENT

1.      The Motion to Dismiss should be denied because Bankruptcy Rule 7001 explicitly states that the following types of relief must be sought through an adversary proceeding: (i) claims to recover money, (2) claims to obtain equitable relief, and (iii) claims to obtain a declaratory judgment.   Thus, contrary to the Debtors' assertions, the claims reconciliation process does not constitute the proper procedure for resolution of the claims asserted in the Complaint.  Accordingly, the Motion to Dismiss should be denied.

2.      Similarly, the Motion to Dismiss should be denied because the automatic stay does not bar the Adversary Proceeding.   Well established law within this District (and throughout the country) states that an adversary proceeding may be asserted against a debtor in the bankruptcy court where the debtor's main case is pending without violating the automatic stay.  Thus, the Debtors' arguments are incorrect, and the Motion to Dismiss should be denied.

3.      Finally, the Debtors' request for a stay of this action should be denied because the Debtors assert the very arguments listed above in support of their stay request.  Their arguments lack merit for the reasons stated in this Answering Brief.  Accordingly, the Court should reject their request for a stay.

## STATEMENT OF FACTS

### I.    Negotiations with the Debtors Regarding the Lease Agreement.

Allied owns a retail center (the "Eastern Shore Center") located at 30500 State Highway 181, Spanish Fort, AL 36527.  (Compl. at ¶ 7).  Throughout the summer and fall of 2017, Allied began marketing retail space at the Eastern Shore Center to prospective tenants with the goal of increasing occupancy and revitalizing the space.  (Id. at ¶ 8).  To that end, Allied's manager, David Mott, emailed Paige Velzeboer on October 17, 2017 to market space at the Eastern Shore Center to the Debtors.  (Id. at ¶ 9).

The following week, the Debtors' then-Vice President of Real Estate, Jatin Malhotra,[3] contacted Mr. Mott directly to request information relating to Eastern Shore Center.  (Id. at ¶ 10).  More specifically, Mr. Malhotra asked Mr. Mott to send him the lease plans and a commercial proposal.  (Id.).  Negotiations took off from that point.  (Id.).

After exchanging at least twelve emails between October 23, 2017 and December 7, 2017 in which Mr. Malhotra and Mr. Mott ironed-out the details of a potential lease arrangement, Mr. Mott and Mr. Malhotra spoke via telephone during the late afternoon and early evening of December 7, 2017.  (Id. at ¶ 11).  One of Allied's primary objectives during lease negotiations was to obtain sales projections for the Debtors' potential retail store at Eastern Shore Center (the "Eastern Shore Store").  (Id. at ¶ 12).  This detail was critical to Allied's determination of whether to enter into a lease agreement with the Debtors in light of the many concessions that the

---

[3] At all times pertinent to the Complaint, Mr. Malhotra was acting in his capacity as the Debtors' Vice President of Real Estate.  Mr. Malhotra's actions may be imputed to the Debtors.  *In re American Film Technologies, Inc.*, 175 B.R. 847, 854 (Bankr. D. Del. 1994) ("It is well established that the fraud of an agent of a corporation is imputed to the corporation when the agent's fraudulent conduct was (1) in the course of his employment, and (2) for the benefit of the corporation.").  Additionally, according to their public filings, the Debtors maintain and have maintained multiple director and officer liability insurance policies that likely cover the claims asserted in the Complaint.

Debtors asked Allied to provide (e.g., over $2 million in construction and improvement costs). (Id.).

The phone call on December 7, 2017 provided insight to Allied regarding sales projections. (Id. at ¶ 13). During that phone call, Mr. Malhotra represented to Mr. Mott that the Debtors projected generating at least $6 million in annual sales at the Eastern Shore Store. (Id.). Mr. Malhotra also represented that the Debtors based those sales projections on recently-generated sales figures at a nearby Forever 21 store located in Mobile, Alabama (the "Mobile Store").[4] (Id.).

According to Mr. Malhotra, the Mobile Store generated $6 million in gross annual sales during 2017. (Id. at ¶ 14). Mr. Malhotra stated that the Eastern Shore Store would generate at least that much in gross annual revenue in light of Eastern Shore Center's size, location, other tenants, and related factors. (Id.). Mr. Malhotra repeated these representations several times during the December 7, 2017 phone call and during other conversations with Mr. Mott. (Id.).

Relying on Mr. Malhotra's representations regarding sales figures at the Mobile Store and sales projections for the Eastern Shore Store, Allied decided to move forward with leasing a retail space at Eastern Shore Center to the Debtors. (Id. at ¶ 15). Importantly, Allied had a tentative agreement with another prospective tenant in place, but ultimately decided to abandon that arrangement in favor of leasing the Eastern Shore Store to the Debtors after receiving Mr. Malhotra's representations during the December 7, 2017 phone call. (Id. at ¶ 16).

---

[4] At the time, the Mobile Store was located at the Bel Air Mall in Mobile, Alabama.

## II.    Relevant Provisions of the Lease Agreement.

As a result of Mr. Malhotra's representations, Allied entered into a lease agreement with Forever 21, Inc. in March 2018 (the "Lease Agreement").[5]  (Id. at ¶ 17).  As with most contracts, the devil is in the details with respect to the Lease Agreement.  For example, in further reliance on Mr. Malhotra's representations regarding sales figures at the Mobile Store and sales projections at the Eastern Shore Store, Allied agreed to a rent structure in the Lease Agreement under which the Debtors' rent payments were wholly dependent on the Debtors' gross sales at the Eastern Shore Store.  (Id. at ¶ 18).  More specifically, the Debtors' minimum rent constitutes five percent of its Monthly Gross Sales.[6]  (Id.).

In addition to accepting a percentage of the Debtors' gross sales at the Eastern Shore Store as rent under the Lease Agreement, Allied went above and beyond to ensure that its retail space at Eastern Shore Center would be acceptable to the Debtors.  (Id. at ¶ 20).  Indeed, under the rider to the Lease Agreement, Allied agreed to reimburse (and did reimburse) the Debtors for space alteration and improvement costs in the amount of $2,136,600.00[7] (the "Improvement Costs").[8]  (Id. at ¶ 21).  Thus, Allied shelled out over two million dollars to the Debtors by the time the Eastern Shore Store opened for business to the public[9] – all in complete reliance on Mr. Malhotra's false representations regarding sales figures at the Mobile Store and sales projections

---

[5] The Lease Agreement is attached to the Complaint as Exhibit A.  Capitalized terms not defined herein shall have the meanings ascribed to them in the Lease Agreement.

[6] The rent described in Sections 1(f) - 1(g) of the Lease Agreement shall hereafter be referred to as the "Rent Structure."

[7] Importantly, the Lease Agreement does not provide a contractual right to reimbursement of the Improvement Costs to Allied.  Thus, Allied could not have filed a simple proof of claim for contract damages as the Debtors assert.

[8] Allied also agreed to pay for approximately $200,000.00 in demolition costs in addition to the Improvement Costs.

[9] [9] Due to the length of time needed to reconstruct the space to the Debtors' specifications, the Debtors did not start paying rent to Allied until the Eastern Shore Store opened in October 2018.

for the Eastern Shore Store.[10]  (Id. at ¶ 22).  Allied then came to learn that the Debtors would perform only a fraction of the sales projections that Allied received when determining whether to enter into the Lease Agreement.  (Id.).

### III.   Allied Learns That It Received False Sales Figures and Sales Projections.

After entering into the Lease Agreement, Allied was dismayed to learn that the sales figures for the Mobile Store and the sales projections for the Eastern Shore Store were false.  (Id. at ¶ 24).  Discussions with a tenant at the Eastern Shore Store who also maintained a store at the Bel Air Mall – the location of the Mobile Store – revealed that the Mobile Store had generated *only a fraction* of the $6 million sales figure that Mr. Malhotra provided for annual revenue generated during 2017.  (Id. at ¶ 25).

More specifically, contrary to Mr. Malhotra's representations, the Mobile Store had generated only $2 million in gross sales during 2017.  (Id. at ¶ 26).  Thus, Mr. Malhotra flagrantly inflated the sales figures for the Mobile Store, and consequently, the sales projections for the Eastern Shore Store, for the purpose of inducing Allied to enter into the Lease Agreement with the Debtors under terms to which Allied never would have agreed if it had received correct sales figures and projections.  (Id.).

In the end, Allied reasonably relied on Mr. Malhotra's misrepresentations when deciding to enter into the Lease Agreement – to its ultimate detriment.  (Id. at ¶ 27).  Moreover, Allied has received only a fraction of the monthly rent that it reasonably expected to receive from the Debtors since entering into the Lease Agreement – all due to Mr. Malhotra's falsely inflated sales figures and sales projections.  (Id. at ¶ 28).  In numerical terms, from the time that it opened for business in October 2018 through September 30, 2019, the Eastern Shore Store generated

---

[10] Even after the parties entered into the Lease Agreement, Mr. Malhotra continued to perpetuate his lie by affirming via text message to David Mott on March 14, 2018 that the Eastern Shore Store would generate *$7 million* in annual sales – an even larger figure than previously represented.

only $1,626,039.85 in gross sales, which constitutes 27.1% of the $6 million in projected gross sales that Allied received from Mr. Malhotra.  (Id. at ¶ 30).

## IV.    The Debtors Seek Bankruptcy Protection and Stop Paying Rent.

Eighteen months after entering into the Lease Agreement, the Debtors commenced the above-captioned bankruptcy proceedings on September 29, 2019 and informed Allied that they intended to (i) close the Eastern Shore Store, and (ii) either sell or reject the Lease Agreement because the Eastern Shore Store is a "low volume store" that generates less than $1.7 million in annual revenue.[11]  (Id. at ¶ 31).  The Debtors followed through with their intentions.[12]

In addition to reimbursing the Debtors for the Improvement Costs and suffering as a "low volume store" despite Mr. Malhotra's representations that it would generate over $6 million in annual revenue, Allied has had difficulty keeping and signing new tenants at Eastern Shore Center ever since the Debtors filed for bankruptcy.  (Id. at ¶ 32).  The Debtors' actions do not comport with the purpose and spirit of the bankruptcy code, and their actions should be admonished.

## **ARGUMENT**

In the Opening Brief, the Debtors assert that the Complaint must be dismissed because (i) the Complaint seeks "money damages for prepetition claims against the Debtors" [OB at ¶ 22] and thus is procedurally improper under Bankruptcy Rule 7001, and (ii) the automatic stay bars the Adversary Proceeding.  (OB at ¶¶ 17-33).  In the alternative, the Debtors assert that the Adversary Proceeding should be stayed because adjudication is premature at this time.  (OB at ¶¶

---

[11] Upon information and belief, the Debtors did not engage in significant marketing efforts to alert customers to the existence of the Eastern Shore Store, thereby dooming it to become a low volume store.

[12] *See Notice of Supplemental Closing Stores List Related to the Order (I) Authorizing the Debtors to Enter into the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief* [Main Case D.I. 359]; *Fourth Notice of Rejection of Certain Executory Contracts and Unexpired Leases* [Main Case D.I. 559].

34-36). These arguments lack merit for the following reasons. *First*, the Complaint seeks primarily equitable and declaratory relief that render Allied's claims directly within the scope of Bankruptcy Rules 7001(7) and 7001(9), and any monetary recovery associated with those claims does not negate their equitable nature.[13] *Second*, the Debtors ignore well-established precedent from this District holding that an adversary proceeding initiated before the Court that is adjudicating a debtor's main bankruptcy case *does not* violate the automatic stay. *Finally*, the Debtors' arguments in support of staying this case fail because they are essentially a continuation of the Debtors' prior, meritless arguments. Accordingly, the Court should deny the Motion to Dismiss and allow this case to proceed.

## I.    LEGAL STANDARD.

To survive a motion to dismiss under Federal Rule 12(b)(6), a plaintiff's complaint must contain factual allegations that, if true, would establish "plausible grounds" for a claim. *Mervyn's LLC v. Lubert-Adler Group IV, LLC (In re Mervyn's Holdings, LLC)*, Adv. Pro. No. 08-11586 (KG), at *101 (Bankr. D. Del. 2010) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 557 (2007)). Indeed, "the threshold requirement ... is that the 'plain statement' possess enough heft to 'show that the pleader is entitled to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557). Although legal conclusions are not entitled to a presumption of truth, in deciding a motion to dismiss under Rule 12(b)(6), a court tests the sufficiency of the factual allegations and evaluates whether the plaintiff is "entitled to offer evidence to support the claims," and "***not*** whether a plaintiff will ultimately prevail." *Id.* (quoting *Oatway v. Am. Int'l Group, Inc.,* 325 F.3d 184, 187 (3d Cir. 2003)) (emphasis added). This rule remains applicable even if "actual proof of those

---

[13] Contrary to the Debtors' arguments, Rule 7001 explicitly provides that a claim to recover money may be asserted through an adversary proceeding. *See* Bankruptcy Rule 7001(1).

facts is improbable" and "a recovery is very remote and unlikely."  *Id*. (quoting *Twombly,* 550 U.S. at 556).

## II.    THE ADVERSARY PROCEEDING IS PROCEDURALLY PROPER AND PRESENTS THE ONLY VIABLE METHOD OF RECOURSE AVAILABLE TO ALLIED.

In the Opening Brief, the Debtors assert that the claims within the Complaint are limited to adjudication through the claims-reconciliation process and thus procedurally improper for adjudication through the Adversary Proceeding under Bankruptcy Rule 7001.  The Debtors are incorrect.  Bankruptcy Rule 7001 states, in pertinent part, as follows:

The following are adversary proceedings:

(1) a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under §554(b) or §725 of the Code, Rule 2017, or Rule 6002;

[…]

(7) a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief;

[…]

(9) a proceeding to obtain a declaratory judgment relating to any of the foregoing.

*See* Fed. R. Bankr. P. 7001.  Thus, the plain language of Bankruptcy Rule 7001 explicitly includes claims to recover money, to obtain equitable relief, and to obtain a declaratory judgment.

Contrary to the Debtors' assertions, the Bankruptcy Rules not only ***allow*** adversary proceedings to obtain equitable and declaratory relief, but ***require*** them.  "The Bankruptcy Rules provide that a request for equitable relief ***must*** be brought by adversary proceeding." *In re Congoleum Corp.*, Case No. 03-51524, at *1 (Bankr. D.N.J. Jul. 27, 2007) (emphasis added)

(attached hereto as <u>Exhibit A</u>); *see also In re Sussex Title, LLC*, Case No. 07-22878PM at *1

(Bankr. D. Md. Jul. 24, 2008) (denying motion for equitable relief brought in main case because

bankruptcy rules require an adversary proceeding to adjudicate such claims) (attached hereto as

<u>Exhibit B</u>); *In re WorldCorp, Inc.*, Case No. 99-298 (MFW) (Bankr. D. Del. Aug. 17, 2000)

("Rule 7001 designates ten types of actions which ***must be brought*** as adversary proceedings in

bankruptcy cases.") (emphasis added) (attached hereto as <u>Exhibit C</u>); *In re Sun Belt Elec.*

*Constructors, Inc.*, 56 B.R. 686, 688 (Bankr. N.D. Ga. 1986).  Additionally, the Debtors cannot

(and do not) dispute that claims for unjust enrichment and contractual rescission due to fraud

constitute claims for equitable relief.[14]  *See In re Montgomery Cty. D.O.H.R*, 10 So. 3d 31, 39

(Ala. Civ. App. 2008) (recognizing rescission as an equitable remedy); *Willcutt v. Union Oil Co.*

*of California*, 432 So. 2d 1217, 1221 (Ala. 1983) (recognizing rescission as an equitable remedy

and stating that fraud provides grounds for rescission); *Lacey v. Edmunds Motor Company*, 269

Ala. 398, 403 (Ala. 1959) (same); *Avis Rent A Car Systems, Inc. v. Heilman*, 876 So. 2d 1111,

1123 (Ala. 2003) ("The doctrine of unjust enrichment is an old <u>equitable</u> remedy permitting the

court in equity and good conscience to disallow one to be unjustly enriched at the expense of

another.") (quoting *Battles v. Atchison*, 545 So.2d 814, 815 (Ala. Civ. App. 1989)) (emphasis

added).[15]

Importantly, this Court has allowed claims for equitable relief to proceed via adversary

proceeding even where they also request monetary relief.  *See, e.g., Watson v. TSC Global, LLC,*

---

[14] They likewise cannot dispute that Count V of the Complaint requests declaratory relief required to be asserted in an adversary proceeding under Bankruptcy Rule 7001.  Indeed, this claim ***could not have*** been asserted in a proof of claim because proofs of claim are not reduced to judgments before a Court, and no declaration would have been issued through the claims-reconciliation process.  In contrast, the Debtors would have this Court believe that Plaintiff's Complaint does not seek equitable or declaratory relief at all, but rather advances only a pre-petition claim for damages disguised as equitable and declaratory relief through "artful pleading."  (OB at ¶ 22).  While Plaintiff's counsel is flattered that the Debtors find her pleading artful, the Debtors provide no support for their bald assertion, and their attempt to contort Plaintiff's claims into the format and substance that suits their needs should be admonished.  Allied is not required to justify its equitable claims to the Debtors.

[15] Alabama substantive law likely applies to Plaintiffs' claims.  (*See* Lease Agreement at § 35).

*et al. (In re TSC Global, LLC)*, Adv. Pro. No. 12-50119 (KG), Mem. Op., (Bankr. D. Del. Jun. 26, 2013) (attached hereto as <u>Exhibit D</u>).  In *TSC Global*, this Honorable Court (specifically, the presiding judge of this Adversary Proceeding) denied the trustee's motion to dismiss under Rule 12(b)(6) and Bankruptcy Rule 7001 and held that WARN Act claims constituted claims for equitable relief suitable to resolution through an adversary proceeding even though they requested monetary damages and arose from pre-petition conduct.  *Id*. at 8.  In so holding, the Court equated the requested monetary relief to restitution for the equitable claims asserted in the complaint and explicitly stated that the claims were properly asserted through an adversary proceeding under Bankruptcy Rule 7001(7) due to their equitable nature.  *Id*. at 6-8.  Thus, the Court denied the motion to dismiss in all respects.[16]

Here, the Complaint asserts the following claims for relief:[17] (1) fraudulent inducement; (2) negligent misrepresentation; (3) rescission of the Lease Agreement and return of the Improvement Costs; (4) unjust enrichment; and (5) declaratory relief relating to proceeds of the Debtors' director and officer liability insurance policies.  (Compl. at ¶¶ 33-70).  Thus, like the complaint in *TSC Global,* the Complaint in this case presents claims for equitable relief.  *TSC Global*, Adv. Pro. No. 12-50119 (KG) at 8; *see also Montgomery Cty.*, 10 So. 3d at 39 (rescission is an equitable remedy); *Willcutt*, 432 So. 2d at 1221 (rescission is an equitable remedy, and fraud provides grounds for rescission); *Lacey*, 269 Ala. at 403 (same); *Avis*, 876 So. 2d at 1123 ("The doctrine of unjust enrichment is an old <u>equitable</u> remedy. . .") (emphasis in original).  Also like the complaint in *TSC Global*, the Complaint's request for monetary relief does not transform its equitable claims into non-equitable claims.  *TSC Global*, Adv. Pro. No.

---

[16] Importantly, the plaintiffs in *TSC Global* commenced the adversary proceeding merely two weeks after the debtors sought bankruptcy protection, and the Court did not find the adversary proceeding premature.  *Id*. at 2-3.

[17] Some of these claims are pled in the alternative, which is explicitly permitted under the Bankruptcy Rules.  Fed. R. Civ. P. 8(d)(2), made applicable herein by the Bankruptcy Rules.  Pleading claims in the alternative does not destroy the equitable nature of those claims.

12-50119 (KG) at 6-8.   Moreover, any request for equitable or declaratory relief outside of an adversary proceeding, even when coupled with a request for pre-petition damages, would likely be denied as violative of Bankruptcy Rule 7001.   *See, e.g., Sussex Title*, Case No. 07-22878PM at *1 (denying motion for equitable relief brought in main case because bankruptcy rules require an adversary proceeding to adjudicate such claims).   Thus, the Adversary Proceeding is not only procedurally proper, but it is also the only viable method of recourse for Allied's claims.   Allied is not trying to "jump the line."   Rather, it seeks equitable and monetary redress for fraud in the most procedurally proper way possible.   The Debtors' arguments to the contrary are baseless and incorrect, and the Motion to Dismiss should be denied.

## III.    THE ADVERSARY PROCEEDING DOES NOT VIOLATE THE AUTOMATIC STAY.

In their Opening Brief, the Debtors next argue that the Adversary Proceeding should be dismissed because it violates the automatic stay.[18]   The long-standing rule in this district is that "the Code implicitly permits the filing of suit in the bankruptcy court against a debtor without violating the automatic stay."   *See, e.g., Kesar, Inc. v. Uni-Marts, LLC (In re Uni-Marts, LLC)*, 405 B.R. 113, 129 (Bankr. D. Del. 2009) (quoting *In re Transcolor Corp.*, 296 B.R. 343, 358 (Bankr. D. Md. 2003)); *Charan Trading Corp. v. Uni-Marts, LLC, et al. (In re Uni-Marts, LLC)*, Mem. Op., Adv. Pro. No. 08-51239 (MFW) at *33-34 (Bankr. D. Del. Jan. 12, 2009) (attached hereto as Exhibit E).   In fact, it is the general rule throughout the majority of jurisdictions. *Charan*, Mem. Op., Adv. Pro. No. 08-51239 (MFW) at *33; *see also Nat'l City Bank of Minneapolis v. Lapides (In re Transcolor Corp.)*, 296 B.R. 343, 358 (Bankr. D. Md. 2003); *In re*

---

[18] The Debtors assert, in part, that "If this Adversary Proceeding were allowed to proceed, the Debtors would be forced to direct resources to defend against Allied's prepetition claims—claims that are properly resolved through the claims reconciliation process."   (OB at ¶ 25).   The Debtors' argument assumes that they should not have to be held accountable for wrongs that they have committed against their creditors and that they should not have to "direct resources to defend" such claims simply because they sought bankruptcy protection.   That is the exact type of bad faith bankruptcy filing that the code seeks to prevent.

*Granite Partners, LP.,* 194 B.R. 318 (Bankr. S.D.N.Y. 1996) (holding shareholders could pursue fraudulent inducement claim without violating the automatic stay); *Civic Ctr. Square, Inc. v. Ford (In re Roxford Foods, Inc.)*, 12 F.3d 875, 878 (9th Cir. 1993) ("the automatic stay [is] inapplicable to a suit commenced in the same court where the bankruptcy was pending"); *Prewitt v. N. Coast Vill., Ltd. (In re N. Coast Vill., Ltd.)*, 135 B.R. 641, 644 (B.A.P. 9th Cir. 1992) ("we conclude that the automatic stay does not apply to proceedings against the debtor in home bankruptcy court"); *Dibbern v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 325 B.R. 89, 97 (Bankr. S.D.N.Y. 2005), *rev'd on other grounds*, 331 B.R. 93 (S.D.N.Y. 2005) ("because [Plaintiff] sued on his prepetition claims in this Court, his assertion of those claims here was not violative of the automatic stay provisions of Bankruptcy Code sections 362(a)(1) and (a)(3), as would have been the case if those claims had been asserted elsewhere"); *J.T. Moran Fin. Corp. v. Am. Consol. Fin. Corp. (In re J.T. Moran Fin. Corp.)*, 124 B.R. 931, 940 (S.D.N.Y. 1991) (holding that the filing of an adversary proceeding is "equivalent to the filing of claims against the estate and allowable under 11 U.S.C. § 501, despite the automatic stay"). *But see Healy/Mellon-Stuart Co. v. Coastal Group, Inc. (In re Coastal Group, Inc.)*, 100 B.R. 177, 178 (Bankr. D. Del. 1989) ("[Plaintiff] has a claim based on a state-law contract […] It is the typical case which cannot be filed subsequent to a bankruptcy filing absent relief from stay for cause.").[19]

Moreover, this Court has ***directly*** addressed whether the automatic stay bars adversary proceedings that seek relief for fraudulent inducement and negligent misrepresentation. The Court concluded that it does not. *Charan*, Adv. Pro. No. 08-51239 (MFW) at 32-35. In *Charan*, the debtors moved to dismiss the plaintiff's adversary complaint for fraudulent inducement. *Id*.

---

[19] *Healy* is factually distinguishable from this case because it involved a breach of contract claim rather than a claim for equitable and declaratory relief based on fraudulent inducement to enter into a contract. *Healy*, 100 B.R. 177 at 178-79.

at 3.  The complaint sought money damages, rescission, and declaratory relief.  *Id.*  In their motion to dismiss, the debtors asserted arguments relating to the automatic stay that are *identical* to the arguments asserted in this case, and the Court (Mary F. Walrath, presiding) held that those arguments lacked merit.  *Id.* at 3, 33.  Indeed, the Court explicitly agreed with the majority view relating to adversary proceedings, stating that the "filing of an adversary proceeding against a debtor in its bankruptcy case can be equivalent to the filing of a proof of claim and, therefore, does not violate the automatic stay."[20]  *Id.* at 34.  Thus, the Court denied the debtor's motion to dismiss.  *See also Bisk Education, Inc. v. Aspect Software, Inc. (In re Aspect Software Parent, Inc.),* Am. Mem. Op., Adv. Pro. No. 16-51510 (MFW) (Bankr. D. Del. Sept. 6, 2017) (denying motion to dismiss adversary complaint that sought *damages* for fraudulent inducement, negligent misrepresentation, breach of contract, breach of warranty, and unjust enrichment) (attached hereto as Exhibit F)

Here, Allied commenced an adversary proceeding in the home court where the Debtors' main bankruptcy case is pending.  Moreover, as asserted above, the Adversary Proceeding constitutes the best and only procedure for asserting Allied's claims against the Debtors – claims that are unquestionably related to the Debtors' bankruptcy proceedings since the Debtors only recently moved to reject the Lease Agreement and to close the Eastern Shore Store. Accordingly, the automatic stay does not preclude the Adversary Proceeding,[21] and the Motion to Dismiss should be denied.[22]

---

[20] Despite this holding, Allied filed proofs of claim relating to this Adversary Proceeding as a protective measure and out of an abundance of caution.

[21] Even if the Court concludes that the automatic stay precludes this Adversary Proceeding, stay relief is warranted for the following reasons.  *First*, lifting the stay would not prejudice the Debtors because their director and officer insurance liability policies (the "Policies") almost certainly cover the claims asserted in this case.  *See, e.g., In re Downey Financial Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010); *In re Am. Classic Voyages, Co.*, 298 B.R. 222, 225 (Bankr. D. Del 2003).  *Second*, the hardship to Allied greatly outweighs any potential hardship to the Debtors because Allied will be forced to bear the totality of the Improvement Costs while receiving only a fraction of the rent that Mr. Malhotra represented would inure to Allied's benefit.  *Am. Classic Voyages, Co.*, 298 B.R. at 225.

## IV.   THE DEBTORS' REQUEST TO STAY THIS ADVERSARY PROCEEDING LACKS MERIT AND SHOULD BE REJECTED.

As an alternative argument, the Debtors assert that the Court should stay this proceeding under 11 U.S.C. § 105(a) ("Section 105(a)") for the following reasons: (i) "allowing the Adversary Proceeding to continue would be in direct contravention of the intent and purpose of the automatic stay and would unnecessarily burden the Debtors;" (OB at ¶ 35), (ii) "continuation of the Adversary Proceeding would force the Debtors—and this Court—to address Allied's Claims ahead of all other claims, potentially prejudicing all other prepetition claimants, including their possible economic recoveries, and wasting judicial time and resources," (Id.), and (iii) "Allied has alternative and more appropriate routes to recover under its claims—the same ones available to all of the other general unsecured creditors" (i.e., the claims reconciliation process) (Id.).  These arguments fail.

*First*, as discussed above, the automatic stay does not bar this Adversary Proceeding. Moreover, it is not limitless, and it does not apply to adversary proceedings initiated in the same bankruptcy court where the Debtors' main case is pending.  *Popple v. Elliott Greenleaf & Siedzikowski, P.C. (In re Popple)*, 532 B.R. 581, 586 (Bankr. M.D. Pa. 2015) ("However, while the automatic stay is broad, it is not limitless.").  To conclude otherwise would essentially reserve adversary proceedings for the Debtors' use only and prevent creditors from utilizing the

---

Similarly, Allied has faced and will continue to face financial hardship from the loss of other tenants due to the fact that a bankrupt entity is advertising store closing sales at Eastern Shore Center.  In contrast, the Debtors will suffer very little hardship because the Policies likely cover this case.  *Third*, Allied's probably of success on the merits is high.  *Id.*  Indeed, Mr. Malhotra either knew or should have known that the sales projections that he provided were false.  He negotiated leases for the Debtors on a regular basis, including the lease at the Mobile Store.  Failing to provide accurate sales figures and projections, for any reason, was utterly unreasonable and fraudulent.

[22] Because the automatic stay does not apply to the Adversary Proceeding, it cannot be extended to shield Mr. Malhotra from liability for his fraudulent and/or negligent acts.  (*See* OB at p. 16, n. 5).  Contrary to the Debtors' assertions, the Complaint asserts claims against both the Debtors (because Mr. Malhotra's acts may be imputed to the Debtors) and Mr. Malhotra in his individual capacity.  (Compl. at ¶¶ 33-46).  Regardless of whether the Adversary Proceeding proceeds against the Debtors, allowing the Adversary Proceeding to proceed against Mr. Malhotra will not prejudice the Debtors – contrary to their assertions in the Opening Brief.  (OB at p. 16, n. 5). Thus, for all reasons stated herein, it should not be stayed or dismissed with regard to Mr. Malhotra.

adversary proceeding process to assert their claims, thereby contravening the entire purpose of the process.  If they had their way, the Debtors would have this Court believe (i) that the claims reconciliation process presents the only procedural avenue of relief available to creditors, and (ii) that debtors may commit fraud and avoid adjudicating those claims entirely simply because they filed a bankruptcy petition.  Such bad faith filings are the *exact* types of bankruptcy filings that the bankruptcy code seeks to prevent.

*Second*, the Bankruptcy Rules and Local Rules provide reasonable and apt procedures for the adjudication of Adversary Proceedings.  An integral part of the bankruptcy process is addressing adversary proceedings asserted against debtors.  The Debtors cannot simply kick the can down the road because they do not wish to dedicate resources to this Adversary Proceeding.  They chose to seek bankruptcy protection – they must now accept both the benefits *and* the burdens of that process, one of which is litigating adversary proceedings.  Moreover, the other claimants in this case will not be prejudiced by the Adversary Proceeding because they enjoy the same multitude of protections that Allied enjoys – they may also seek relief through an adversary proceeding and the claims reconciliation process.  Finally, no other adversary proceeding has been filed against the Debtors to date.  Litigating one adversary proceeding will not "waste" their resources or those of the Court.

*Third*, as discussed above, the claims reconciliation process is an inappropriate venue for resolution of Allied's claims in this Adversary Proceeding.  Indeed, equitable and declaratory relief cannot be provided through resolution of a proof of claim.  Moreover, Allied's claims are fundamentally different than those of other lessors in this case.  This is not a simple case of lease rejection and a resulting breach of contract that gives rise to a rejection damages claim.[23]  Rather,

---

[23] Allied does indeed intend to utilize the claims reconciliation process for its appropriate purpose – resolution of Allied's rejection damages claim.  Allied intends to file such claim by the appropriate deadline.

Allied entered into the Lease Agreement as a result of fraud (or at the very least, negligent misrepresentation), and the most appropriate remedy is rescission of the Lease Agreement, restoration of the *status quo ante*, and accompanying restitution, as asserted in the Adversary Complaint.   Rescission cannot be effectuated through a proof of claim, and the Debtors' arguments fail.  They certainly do not justify a stay – in fact, they are merely a recitation of the Debtors' prior arguments on this topic.

Finally, like the automatic stay, the Court's discretion under Section 105(a) is not limitless.   *In re Nosek*, 363 B.R. 643, 647 (Bankr. D. Mass. 2007).   The Court should not entertain a request to stay this proceeding for the same, meritless reasons that equally do not justify dismissal of the case.   Moreover, this Court has allowed adversary proceedings of this nature to proceed even where commenced mere *days* after the filing of a chapter 11 bankruptcy petition, thereby indicating that such proceedings do not deprive debtors of the "breathing room" necessary to reorganize.   *See TSC Global,* Adv. Pro. No. 12-50119 (KG) at *2-3.   For these reasons, the Court should decline to stay this Adversary Proceeding under Section 105(a).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motion in its entirety.

Respectfully submitted,

Dated: January 17, 2020                    **KASHISHIAN LAW LLC,**

   */s/ Ann M. Kashishian*
Ann M. Kashishian (DE Bar No. 5622)
501 Silverside Road
Wilmington, DE  19809
T. (484) 302-8417
F. (484) 930-0091
E. amk@kashishianlaw.com

*Counsel to Plaintiff Allied Development of Alabama, LLC*